UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RANDY L. SHEARS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-00752-SRC |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**Memorandum and Order**

Petitioner Randy L. Shears asks the Court to vacate his sentence under 28 U.S.C. § 2255. Docs. 1, 7.  Although Shears previously demonstrated his satisfaction with his counsel's services, he now claims that defense counsel was constitutionally ineffective.  Having carefully reviewed the record, the Court holds that Shears is not entitled to relief or an evidentiary hearing under § 2255, and denies his motion accordingly.

**I.    Statement of facts**

Shears' guilty plea agreement describes the following facts:

On January 11, 2021, a St. Louis County police officer in a marked patrol car saw a Dodge Ram pickup truck driving in St. Louis County, within the Eastern District of Missouri.  The license plate on the Dodge Ram returned to a BMW sedan.  The officer attempted to stop the Dodge Ram, however, the driver fled from the marked police car at a high rate of speed.  Multiple other police cars attempted to stop the Dodge Ram, and eventually police used a tire deflation device to render the truck inoperable.  After the truck stopped, the two occupants abandoned the truck and fled from police on foot.  Police chased the driver of the truck, the Defendant Randy Shears, and caught him running through a nearby yard.  Police arrested Shears and found in his pocket multiple bags that police suspected to contain controlled substances.  Police searched the Dodge Ram, and on the driver's floorboard, they found a loaded Ruger 9mm semi-automatic pistol.  Police also found in the back sear of the truck a backpack containing plastic baggies, empty pill capsules, a coffee grinder, and a Dormin bottle, which are all items used in packaging fentanyl for sale.  Police checked the VIN on the Dodge Ram and found that it had been reported stolen.

>The baggies containing the suspected controlled substances were sent to the St. Louis County crime lab where the contents of two of the baggies tested positive for fentanyl.  The Defendant admits that he knew that the baggies contained fentanyl, and the Defendant intended to distribute some or all of the fentanyl.
>
>The Ruger 9mm pistol was not manufactured in the State of Missouri, and therefore, must have travelled in and affecting interstate and foreign commerce in order to have been physically present in the State of Missouri on January 11, 2021.  The Ruger 9mm was designed to expel a projectile by the action of an explosive—and, as such, is a firearm under federal law.
>
>On October 13, 2016, the Defendant was convicted of the felony offense of Unlawful Possession of a Firearm and was sentenced to 7 years in the Missouri Department of Corrections.  At the time the defendant possessed the firearm in this case, he knew that he had been previously convicted of a felony.

*United States v. Shears,* Case No. 4:21-cr-00295-SRC-1, doc. 41 at 3–4.[1]

## II.    Procedural history

### A. Criminal proceedings

In May 2021, a federal grand jury returned a three-count indictment against Shears, charging him with one count of knowingly possessing and intending to distribute a mixture or substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1); one count of knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and one count of knowingly possessing a firearm after a prior felony conviction, in violation of 18 U.S.C. § 922(g)(1).  Docs. 1–2.[2]  Eighteen months later, "having been fully advised of his right to file pre-trial motions," Shears filed a waiver of such motions.  Doc. 37.  "Counsel has personally discussed this matter with the Defendant," read the waiver in relevant part, "and the Defendant agrees and concurs in the decision not to raise any issues by way of pre-trial motions."  *Id.*

---

[1] The Court cites to page numbers as assigned by CM/ECF..
[2] The "Doc." numbers used in the "Criminal proceedings" sub-section only are from *United States v. Shears*, Case No. 4:21-cr-00295-SRC-1.

Within days of the waiver, Shears entered into a plea agreement with the United States. Doc. 41. He admitted to knowingly violating 21 U.S.C. § 841(a)(1), admitted there was a factual basis for his plea as to that count, and confirmed that he fully understood the elements of his crime—namely:

1. That he possessed a mixture or substance containing a detectable amount of fentanyl,
2. That he knew he possessed a controlled substance, and
3. That he intended to distribute some or all of the mixture or substance containing fentanyl.

*Id.* at 2. He also admitted to knowingly violating 18 U.S.C. § 922(g)(1), admitted that there was a factual basis for his plea as to that count, and confirmed that he fully understood the elements of his crime—namely:

1. That he had been convicted of a crime punishable by imprisonment for a term exceeding one year;
2. That he thereafter knowingly possessed a firearm;
3. That at the time he knowingly possessed a firearm, he also knew he had been convicted of a crime punishable by imprisonment for more than one year; and
4. That the firearm was transported across a state line at some point during or before his possession thereof.

*Id.* at 2–3.

Shears also agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s)." *Id.* at 9; doc. 63, Plea Tr.

15:6–15:24.  Further, he agreed to "waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel."  Doc. 41 at 10; doc. 63, Plea Tr. 16:6–16:11.

The United States Probation Officer prepared a Presentence Investigation Report (PSR).  Doc. 49.  The PSR calculated Shears' total offense level as 23 and his criminal history category as VI.  *Id.* at ¶¶ 33, 51.   Based upon that total offense level and criminal history category, the imprisonment range that the federal guidelines provided was 92 months to 115 months.  *See id.* at ¶ 83.

In November 2022, the Court held a plea hearing in which Shears pleaded guilty to possession with intent to distribute fentanyl and being a felon in possession of a firearm.  Docs. 40–41; doc. 63, Plea Tr. 9:14–10:5, 23:25–24:6.  Shears confirmed that he understood the elements of his crimes and that he did, in fact, do everything set forth in those elements:

| | |
|---|---|
| **[THE COURT:]** | [S]ection 3 of the plea agreement sets forth the elements of the offense that you are pleading guilty to or offenses you are pleading guilty to.  The elements are those things that the United States must prove at trial beyond a reasonable doubt before you could be convicted or found guilty.  Do you understand that? |
| **[SHEARS:]** | Yes, sir. |
| **[THE COURT:]** | The elements as to Count 1 are as follows:  number one, you possessed a mixture or substance containing a detectable amount of fentanyl; number two, you knew that you possessed a controlled substance; and, three, that you intended to distribute some or all of the mixture or substance containing the fentanyl.  Do you understand all those things? |
| **[SHEARS:]** | Yes, sir. |
| **[THE COURT:]** | Did you in fact do all of those things? |

4

| | |
|---|---|
| **[SHEARS:]** | Yes, sir. |
| **[THE COURT:]** | With respect to Count 3, the elements are as follows: [o]ne, you have been convicted of a crime punishable by a term of imprisonment exceeding one year; number two, you thereafter knowingly possessed a firearm; number three, at the time you knowingly possessed a firearm, you knew you had been convicted of a crime punishable by a term of imprisonment exceeding one year; and, number four, that at some point during or before your possession of the firearm, it was transported across a state line. Do you understand all of those things? |
| **[SHEARS:]** | Yes, sir. |
| **[THE COURT:]** | Did you in fact do all of those things? |
| | . . . |
| **[SHEARS:]** | Yes, sir. |
| | . . . |
| **[THE COURT:]** | Are you pleading guilty because you are in fact guilty as charged in Counts 1 and 3 of the indictment? |
| **[SHEARS:]** | Yes, sir. |

Doc. 63, Plea Tr. 11:5–12:20; 24:10–24:12. He also confirmed that he was entirely satisfied with the services rendered him by defense counsel:

| | |
|---|---|
| **[THE COURT:]** | Mr. Shears, about how long have you known [defense counsel]? |
| **[SHEARS:]** | Since she [was] assigned to my case. |
| **[THE COURT:]** | So about how long ago was that? |
| **[SHEARS:]** | A couple months. |
| **[THE COURT:]** | Have any other attorneys assisted you in connection with this case? |
| **[SHEARS:]** | No, sir. |

5

| | |
|---|---|
| **[THE COURT:]** | Has [defense counsel] conducted herself in a way that causes you to have any complaint against her for anything she's done, anything you believe she's failed to do, or any other reason at all? |
| **[SHEARS:]** | No, sir. |
| **[THE COURT:]** | And are you fully satisfied with the services that [she] has performed for you in this case? |
| **[SHEARS:]** | Yes. |
| **[THE COURT:]** | I'm going to talk with you now about waiving pretrial motions and trial rights. So do you understand that by pleading guilty you'll be giving up the right to file pretrial motions, including motions to suppress evidence or any statements that you may have made? |
| **[SHEARS:]** | Yes, sir. |
| **[THE COURT:]** | Did you discuss that decision with [defense counsel]? |
| **[SHEARS:]** | Yes, sir. |
| **[THE COURT:]** | And are you fully satisfied with the decision that you and she have made about waiving pretrial motions? |
| **[SHEARS:]** | Yes, sir. |

*Id.* at 5:21–6:22.

In March 2023, the Court held a sentencing hearing in which it sentenced Shears to a within-the-guidelines-range sentence of 112 months of imprisonment followed by a three-year term of supervised release. Doc. 54. Before imposing its sentence, the Court once again confirmed that Shears remained fully satisfied with the services rendered him by defense counsel:

| | |
|---|---|
| **THE COURT:** | [W]hen you plead guilty, did you plead guilty because you are guilty as charged? |

6

| | |
|---|---|
| [SHEARS:] | Yes, sir. |
| THE COURT: | And when you pled guilty, you told me that you were fully satisfied with the services that [defense counsel] has performed for you in this case.  Since then, have you had enough time to talk with [her] and have her answer any questions you have about the case? |
| [SHEARS]: | Yes, sir. |
| THE COURT: | And do you remain fully satisfied with the services that she has performed for you in this case? |
| [SHEARS]: | Yes, sir. |

Doc. 65, Sentencing Tr. 3:10–3:31.

After sentencing, Shears did not appeal, and is currently serving his sentence at FCI Greenville in Illinois with a projected release date of August 3, 2030.[3]

**B. Civil proceedings**

In June 2023, Shears timely filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  Doc. 1.  His claim read in its entirety:

> Ineffective Assistance of Counsel
> File a motion to Dismiss indictment on a clear
> IAD Violation, In opposition to petitioner's request
> to do so.

*Id.* at 4.  The United States promptly responded, arguing that "Shears' bare claim of ineffective assistance, offered without any factual support or legal authority, does not demonstrate deficient performance by Shears' counsel. . . . Shears has not met his burden."  Doc. 3 at 7.

Shortly thereafter, Shears concurrently filed two documents:  a reply and a "Motion To Amend."  Docs. 6–7.  The former explained that he had not realized he needed to provide additional facts, and asked that the Court grant him leave to amend his motion.  Doc. 6 at 2.

---

[3] Find an inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited March 28, 2024).

"That amended motion," he wrote in closing, "has been included with this reply in case the Court grants the petitioner's request." *Id.*  The latter document, entitled "Motion to Amend" and consisting almost entirely of one section entitled "Statement of Facts," makes legal and factual arguments expanding on his ineffective-assistance-of-counsel claim. *See* doc. 7.  Shears argues, in brief, that defense counsel was ineffective because she filed six motions for extension of time to file pre-trial motions before eventually merely filing a waiver of pre-trial motions, thereby delaying prosecution for "248 days." *Id.* at 2–3.  In response to those two documents, the United States explained that it did not object to Shears amending his motion, but that "for the reasons stated in the government's original response," his arguments "fail[] as a matter of law." Doc. 9.

### III.   Standard of review

A federal prisoner who seeks relief under 28 U.S.C. § 2255 on grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  To obtain relief under § 2255, the petitioner must establish a constitutional or federal statutory violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (citation omitted).

Of course, claims brought under § 2255 may be limited by procedural default. *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994) (explaining that a petitioner "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not").  However, the Eighth Circuit has twice noted in dicta that, if the error claimed by a petitioner is jurisdictional, he may raise the matter on collateral review

8

without having to survive a procedural default analysis. *Beaulieu v. Minnesota*, 583 F.3d 570, 574 n.3 (8th Cir. 2009); *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002) ("[I]f the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis"). Still, "constitutional or jurisdictional claims not raised on direct appeal cannot be raised in a § 2255 motion unless the movant can establish '(1) cause for the default and actual prejudice or (2) actual innocence.'" *Tripp v. United States*, No. 1:11-cv-00118-ERW, 2012 WL 27930, at *2 (E.D. Mo. Jan. 5, 2012) (quoting *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001)).

A petitioner may raise an ineffective-assistance-of-counsel claim for the first time in a § 2255 motion, even if he could have raised the same claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Additionally, a petitioner's attorney may serve as counsel for both trial and appellate proceedings, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To succeed on an ineffective-assistance-of-counsel claim, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001). A movant "faces a heavy burden" to establish ineffective assistance of counsel under § 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88; *Sera*, 267 F.3d at 874. Two substantial impediments exist to making such a

9

showing. First, the law applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690).

If procedural rules do not bar the petitioner's claims, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner must receive an evidentiary hearing "when the facts alleged, if true, would entitle [him] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (citation omitted). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

**IV.   Discussion**

In his initial § 2255 motion, Shears' brief description of his claim (reprinted above), though unclear, appeared to express his dissatisfaction with defense counsel's refusal of his request that she file a motion to dismiss due to a violation of the Interstate Agreement on Detainers (IAD). Doc. 1 at 4. Now, however, he moves to amend his initial motion, docs. 6–7; the Court grants his motion to amend and construes his "Motion to Amend," doc. 7, as Shears' amended § 2255 motion. The amended motion, which replaces his initial motion, *cf. Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014), thoroughly explains Shears' position and reveals a related, but somewhat different, claim: that defense counsel was constitutionally ineffective because despite his "request for a speedy trial via the IAD," she filed

10

six motions for extensions of time in which to file pretrial motions before filing a notice that she would not be filing pretrial motions after all.  Doc. 7 at 2.  A competent attorney, he protests, would never have done so:

> The fact that defense counsel filed this [notice] after six continuances shows that counsel never had any pretrial motion to file.  She was simply using a legal avenue to stall for time . . . .  A reasonably competent attorney would not have requested continuances, let alone six of them, knowing that the burden was on the Government to prove [its] case in 180 days or dismiss the indictment. . . .  During one of the meetings between petitioner and defense counsel . . . she stated . . . [that] "Your best bet is to file a motion for ineffective assistance of counsel since I messed up your 180 day request for a speedy trial."  During this conversation [counsel] told petitioner that since she had messed up his 180 day speedy trial . . . he should plead guilty. . . .  Had it not been for [counsel's] incompetence . . . [p]etitioner would not have plead[ed] guilty.

Doc. 7 at 2–3 (emphasis omitted).

But the record in this case belies Shears' insistence that he was dissatisfied with defense counsel in any way—whether for her filing of motions for extensions of time or for anything else.  At his change-of-plea hearing, the Court repeatedly asked Shears about whether "[defense counsel had] conducted herself in a way that caus[ed him] to have any complaint against her for anything she[] [had] done, anything [he] believe[d] she[] [had] failed to do, or any other reason at all."  *See supra* pp. 5–6.  Shears was unequivocal that he had no complaint regarding defense counsel's work.  *See id.*  "[A]re you fully satisfied," the Court asked again, "with the services that [she] has performed for you in this case?"  *See supra* p. 6.  "Yes," he replied.  *See id.*  The Court then asked Shears specifically about his satisfaction with the decision not to file any pretrial motions.  "[D]o you understand," the Court asked, "that by pleading guilty you'll be giving up the right to file pretrial motions . . .?"  *See id.*  Shears replied that he understood.  *See id.*  "Did you discuss that decision with [defense counsel]?"  *See id.*  Shears affirmed that he did.  *See id.*  "And are you fully satisfied with the decision that you and [defense counsel] have made

11

about waiving pretrial motions?" *See id.* "Yes, sir," Shears unequivocally replied. *See id.* Shears pleaded guilty, and at his sentencing hearing months later, the Court asked him once more whether he "remain[ed] fully satisfied with the services that [defense counsel had] performed for [him] in this case." *See supra* pp. 6–7. Once again, Shears was unequivocal that he remained fully satisfied with her work. *See id.* These repeated statements of satisfaction with defense counsel's decisions, including that not to file any pretrial motions, belie Shears' present assertions that he demanded defense counsel file a motion to dismiss on the basis of an IAD violation, much less that he disagreed with defense counsel's decision not to do so.

In any event, neither of the two *Strickland* prongs necessary to demonstrate ineffective assistance of counsel obtain in this case. First, defense counsel was not constitutionally ineffective: seeking extensions of time to conduct due diligence on a case hardly falls outside "the wide range of reasonable professional assistance." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 689). Further, Shears' argument rests in part on the fact that in the end, defense counsel declined to file a pretrial motion—but it is axiomatic that such a "[s]trategic choice" is "virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690). Shears emphasizes the delays that counsel's multiple motions for extensions of time caused, doc. 7 at 2–3, but the Court notes that after the grand jury handed down its indictment in May 2021, doc. 1, pretrial discovery proceeded during the height of the COVID-19 pandemic. At the time, courts throughout the country faced delays, and in this court, defense counsel faced numerous challenges in meeting with clients and obtaining discovery materials. Accordingly, the Court finds that on the facts and circumstances attendant to this case, the multiple extensions of time were appropriate.

Second, even if Shears had satisfied the first prong, he has not demonstrated prejudice—that is, he has not demonstrated that had defense counsel actually filed a motion to dismiss on the basis of a violation of the IAD, he would have prevailed on the motion and the Court would have dismissed his case.  The IAD provides, in relevant part, that when an inmate in the custody of one state (or the federal government) is the subject of an indictment in another, the inmate may request that his trial on the outstanding indictment commence within 180 days.  18 U.S.C. app. 2 § 2, art. III(a).  That rule comes with a caveat, however:  "In determining the duration and expiration of the time periods provided in article[] III . . . the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."  § 2, art. VI(a).  The Eighth Circuit has interpreted this caveat to include those times when the habeas petitioner was "legally or administratively" unavailable to stand trial.  *See Young v. Mabry*, 596 F.2d 339, 344 (8th Cir. 1979); *United States v. Neal*, 564 F.3d 1351, 1354 (8th Cir. 2009).  Similarly, federal law excludes from "the time within which the trial of any . . . offense must commence" those times when a judge grants a continuance "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).

Accordingly, Shears' motion to dismiss on IAD grounds would have had to convince the Court not only that 180 days had expired, but that he had been "legally [and] administratively" available all along.  But Shears has not demonstrated that he would have so convinced the Court.  In fact, in March 2020, the Court issued an administrative order continuing all civil and criminal jury trials due to the COVID-19 pandemic.  *See In re:  Court Operations Restrictions Due to COVID-19 Response*, AORD-0024 (E.D. Mo. Mar. 17, 2020).  The Court permitted "only a very

13

limited number of jury trials" to commence beginning July 13, 2020, *see In re: Case Operations Due to COVID-19 Response*, AORD-0037 (E.D. Mo. July 6, 2020), and extended that limitation repeatedly until September 2, 2021, when it vacated its prior orders on the subject and permitted all jury trials to commence subject only to those safety-related limitations imposed by the judge in each case, *see In re: Case Operations Due to COVID-19 Response*, AORD-0061 (E.D. Mo. Sept. 2, 2021). In other words, under its own administrative orders issued in the light of COVID-19, this Court could hold no more than a minimal number of criminal trials from March 2020 through September 2, 2021. Accordingly, for that period of time, most prisoners—including Shears—were "unable to stand trial, as determined by the court having jurisdiction of the matter." 18 U.S.C. app. 2 § 2, art. VI(a). Because the grand jury did not return Shears's indictment until May 2021, in the midst of the affected period, he would not have become administratively available to stand trial until September 2, 2021, at which point Article VI of the IAD would cease tolling the clock, and Shears' 180-day timer would begin to run.

Measuring from that date, Shears' arraignment on February 8, 2022, fell on the 159th day, well within the 180-day period. *See United States v. Shears*, Case No. 4:21-cr-00295-SRC-1, doc. 7. And from that day through November 3, 2022, it was Shears' own requests for extensions of time—of which, as discussed above, he repeatedly expressed approval on the record to the Court, *see supra* pp. 11–12—that delayed proceedings in this case. *United States v. Shears*, Case No. 4:21-cr-00295-SRC-1, docs. 7, 21, 23, 25, 27, 32. Five days later, on November 8, 2022, Shears pleaded guilty. *See id.* docs. 40–42. After accounting for all appropriate tolling, that sequence of events does not place Shears' change-of-plea hearing outside the required 180-day period. Accordingly, Shears has not demonstrated that he would have prevailed on a motion to dismiss on IAD grounds.

14

Next, the record squarely forecloses Shears' protest that "[h]ad it not been for [defense counsel's] incompetence . . . [he] would not have plead[ed] guilty."  Doc. 7 at 2–3.  Shears admitted to the Court, on the record, that he did everything of which the indictment accuses him in Counts 1 and 3 thereof.  *See supra* pp. 4–5.  And he thereafter admitted to the Court that he was "pleading guilty because [he was] in fact guilty as charged in Counts 1 and 3 of the indictment."  *See id.* p. 5; *see also id.* p. 6.  Accordingly, "the record affirmatively refutes the factual assertions upon which [Shears' claim that he would not have pleaded guilty] is based."  *Shaw*, 24 F.3d at 1043.

Finally, the record likewise forecloses Shears' assertion that if not for defense counsel's incompetence, he would have brought a pre-trial motion to dismiss due to an IAD violation by the government.  Doc. 7 at 3.  The same motions for extensions of time of which Shears complains gave him plenty of time to bring such a motion, but in the end, after discussions with defense counsel and "having been fully advised of his right to file pre-trial motions," Shears "agree[d] and concur[red] in the decision not to raise any issues by way of pre-trial motions."  *See supra* pp. 2–3.  On the record to the Court, Shears would later affirmatively state his satisfaction with defense counsel's work in all respects, specifically including her decision to waive pretrial motions.  *See id.* pp. 6–7.  Accordingly, the record categorically refutes Shears' contention that but for defense counsel's ineffective assistance, he would have brought—much less succeeded on—a pre-trial motion to dismiss.  To the contrary:  the record belies Shears' present assertions that he asked defense counsel to file a pre-trial motion based on the IAD, and instead indicates that defense counsel's decision not to bring pre-trial motions reflected not only her own judgment, but Shears' wishes, too.

15

Having thoroughly reviewed the record, including the transcripts of Shears' change-of-plea and sentencing hearings, the Court finds that defense counsel did not provide ineffective assistance. Accordingly, the Court denies Shears' ineffective-assistance claims.

## V.     Certificate of appealability

For the Court to issue a certificate of appealability, Shears must make a substantial showing that he suffered the denial of a constitutional right. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). A substantial showing is one indicating that reasonable jurists could debate the issues, a court could resolve the issues differently, or the issues deserve further proceedings. *Id*. But as described in the discussion above, Shears has not made such a showing. Accordingly, the Court declines to issue a certificate of appealability in this case.

## VI.    Conclusion

The Court finds that the record conclusively establishes that Shears is not entitled to relief. Accordingly, the Court grants Shears' Motion to Amend, *see* docs. 6, 7, but denies his amended Motion to Vacate, Set Aside, or Correct Sentence, *see* docs. 1, 7, and his request for an evidentiary hearing, *id*. A separate order of dismissal accompanies this memorandum and order.

So ordered this 28th day of March 2024.

SLR. CR

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE